AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

Christian Roberto Flores,

Defendant(s)

Case No.   2:22-mj-00744-DUTY

FILED
CLERK, U.S. DISTRICT COURT
February 23, 2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MR___ DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
2/23/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 30, 2021 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm and Ammunition by a Felon |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Travis Gibb
Complainant's signature

Travis Gibb, ATF Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: February 23, 2022

*[signature]*
Judge's signature

City and state: Los Angeles, California

Hon. Pedro V. Castillo, U.S. Magistrate Judge
Printed name and title

AUSA: Alexander Robbins – 213-894-2400

**AFFIDAVIT**

I, Travis Gibb, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. This affidavit is made in support of a criminal complaint and arrest warrant for **Christian Roberto Flores** ("**Flores**") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

2. The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.

3. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. Further, all dates and amounts are approximations, and the words "on or about" and "approximately" are omitted for clarity.

## II. BACKGROUND OF AFFIANT

4. I am employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") as a Special Agent. I have been employed in this capacity since 2014. I am currently assigned to the ATF Los Angeles Field Division and am responsible for investigating violations of federal arson, explosives, and

1

firearms laws and regulations. I regularly refer to these laws and regulations during the course of my official duties.

5. I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, and I have completed specialized training at the ATF National Academy in the fields of arson, explosives, and firearms.

6. During my employment with ATF, I have participated in various investigations involving people illegally possessing or trafficking firearms and ammunition. I have also participated in several investigations involving the unlawful transportation, possession, and distribution of controlled substances, including crack cocaine, methamphetamine, and marijuana. Furthermore, I have participated in numerous computer crime investigations, and have received both formal and informal training regarding computer-related investigations and computer technology.

7. Prior to being an ATF Special Agent, I was employed by Customs and Border Protection as a border patrol agent for approximately two years. In that role, I attended and graduated from the Border Patrol Academy, where I received extensive training in narcotics and human smuggling techniques and routes, fraudulent documents, and immigration law.

### III. SUMMARY OF PROBABLE CAUSE

8. On March 30, 2021, a Torrance Police Department ("TPD") officer attempted to conduct a traffic stop of **Flores**, who was wearing a black backpack and driving a motorcycle. **Flores**, who has been convicted of numerous felony offenses and at the time was on probation in California with search

conditions, fled from the officer.  Thereafter, officers detained **Flores** and conducted a probation search of **Flores**'s backpack and found 18.7 grams of methamphetamine.  Officers also found an iPhone on **Flores**'s person.

9.   Later that day, officers conducted a probation search of **Flores**'s bedroom and found a loaded VEPR-Pioneer rifle, an additional magazine, an AR-style upper receiver, a drill press that could be used to build an AR-15-type rifle, an AR-15 parts kit, a body-armor plate carrier, a Kevlar helmet, and a rifle scope.

10.   Thereafter, I executed federal search warrants on the iPhone seized from **Flores** incident to arrest and on the iCloud account to which the phone was backing up, "M8feedkill@icloud.com".  I found photographs of **Flores** possessing what appears to be the same VEPR-Pioneer rifle, including a photograph of **Flores** in his bedroom standing next to the rifle.

### IV.   STATEMENT OF PROBABLE CAUSE

11.   Based on my review of law enforcement reports, body-worn video, photographs, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.   TPD officers conduct a traffic stop and probation search, and find a glass pipe and methamphetamine in Flores's possession**

12.   On March 30, 2021, at 11:09 a.m., a Torrance Police Department ("TPD") officer was on patrol in Torrance, California, in the area of Crenshaw Boulevard and Torrance

Boulevard, when the officer observed a blue motorcycle with the license plate improperly positioned, rendering the license plate not clearly visible.

13. As the officer attempted to approach the motorcycle to conduct a traffic stop, the motorcycle ran a red light and quickly made its way to a business, then stopped in front of 475 Alaska Avenue in Torrance. As the officer approached the motorcycle in her patrol car, she activated her police lights and siren to conduct a traffic stop of the driver of the motorcycle, who was later identified as **Flores**.

14. Instead of stopping, **Flores** parked his motorcycle, dismounted, and quickly walked through the front door of 475 Alaska Avenue into what appeared to be a business. As he walked into the business, **Flores** ignored the officer's commands, who from approximately 15 feet away was shouting at **Flores** to stop. Instead, **Flores** turned and looked at the officer, then entered the building. The officer tried to enter the building after **Flores**, but the door to the building locked automatically behind **Flores**. When **Flores** went inside the building, he was wearing a black jacket and carrying a black backpack.

15. Once the officer was close enough to read the license plate of **Flores**'s motorcycle, the officer checked the plate number in a law-enforcement database and found that the motorcycle was registered to **Flores**.

16. After knocking on the door of 475 Alaska Avenue for a few minutes, an employee who appeared to be working in the building answered the door, and the officer asked if the

employee saw a male, referring to **Flores**, enter the building. The employee said no but told the officer that he would get a manager to assist the officer.

17. Soon thereafter, a manager came to the front door of the building. The officer asked the manager if **Flores** worked there, and the manager responded that he did. The officer then asked the manager to ask **Flores** to come outside.

18. After a few minutes, **Flores** exited the building, at which point the officer, with the help of other TPD officers who arrived on scene, detained **Flores**. When **Flores** came out of the building, **Flores** was no longer wearing the black jacket or in possession of the backpack the arresting officer saw **Flores** with moments earlier when **Flores** had entered the building.

19. TPD officers found **Flores**'s driver's license located in **Flores**'s wallet, which was in **Flores**'s pants pocket. The officers used the driver's license to confirm **Flores**'s identity.

20. Officers also found a black Apple iPhone on **Flores**'s person ("**Flores**'s cell phone").

21. The officers then learned from a law-enforcement database that **Flores** was on probation in California with search conditions.

22. After detaining **Flores**, the arresting officer asked **Flores** why he did not yield to her police lights, police siren, and commands for him to stop, and **Flores** responded that he did not want to be late for work. The officer asked **Flores** where his black jacket and black backpack were located, and **Flores**

informed the officer that they were in the break room inside the building, referring to 475 Alaska Avenue.

23. The manager escorted the arresting officer inside the building to the break room, where the officer found **Flores**'s backpack on the floor laying against a wall.

24. Since **Flores** was on probation with search conditions, the officer conducted a search of **Flores**'s backpack. Inside of the backpack, the officer found a glass pipe with a bulbous burnt end (commonly used to smoke methamphetamine) and a black box, inside of which was a white plastic bag containing a crystalline substance resembling methamphetamine. The substance later tested positive for methamphetamine with a weight of 18.7 grams.

25. **Flores** was arrested for possession of a controlled substance, possession of paraphernalia, and evading or delaying arrest, and transported to the Torrance police station.

**B.   Probation search of Flores's residence**

26. Later that same day, on March 30, 2021, at approximately 3:40 p.m., after verifying **Flores**'s address and confirming that the terms of his probation included search conditions, TPD officers conducted a probation search of **Flores**'s residence, located on Eshelman Avenue in Lomita, California.

27. The arresting officer also contacted **Flores**'s state probation officer, who specifically told the officer that

**Flores**'s probation search conditions allowed officers to search **Flores**'s cell phone.[1]

28. Upon arriving at the address listed as **Flores**'s residence, TPD officers saw that the residence was a single-family detached house with multiple bedrooms and an outdoor storage shed. TPD officers identified **Flores**'s bedroom as being the room located in the southeast corner of the house, based on personal items belonging to **Flores** in the bedroom and **Flores**'s mother later confirming that the bedroom belonged to **Flores**.

29. TPD officers searched **Flores**'s bedroom and found a Molot-Oruzhie, model VEPR-Pioneer, 7.62x39mm-caliber rifle, bearing serial number 12PP1190, with a loaded magazine containing 40 rounds of 7.62x39mm-caliber ammunition.

30. A records check revealed that the rifle had been reported stolen during a residential burglary in San Bernardino on September 5, 2016.

31. In **Flores**'s bedroom, in addition to the VEPR-Pioneer rifle, loaded magazine, and AR-style upper receiver, officers also found a drill press that could be used to build a completed AR-15-type rifle out of upper and lower receivers, an AR-15 parts kit, a body-armor plate carrier, a Kevlar helmet, and a rifle scope.

C. **Flores's criminal history**

32. I have reviewed criminal history records for **Flores** and a criminal-history report from a law-enforcement database.

---

[1] The arresting officer then manually searched **Flores**'s cell phone. As discussed below, I am not relying on any information found during that search in this statement of probable cause.

From these documents I learned that **Flores** has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a.   Possession of a short-barreled rifle, in violation of California Penal Code Section 33215, in the Superior Court of California, County of Los Angeles, case number YA087381, on or about August 21, 2013.

    b.   Domestic violence with injury, in violation of California Penal Code Section 273.5(a), in the Superior Court of California, County of Los Angeles, case number YA087381, on or about August 21, 2013.

    c.   Possession of an explosive, in violation of California Health and Safety Code Section 12305, in the Superior Court of California, County of Orange, case number 15HF1382, on or about January 26, 2016.

    d.   Possession of a controlled substance for sale, in violation of California Health and Safety Code Section 11351, in the Superior Court of California, County of Orange, case number 15HF1382, on or about January 26, 2016.

    e.   Possession for sale of a controlled substance, in violation of California Health and Safety Code Section 11378, in the Superior Court of California, County of Orange, case number 15HF1382, on or about January 26, 2016.

    f.   Possession of a controlled substance for sale, in violation of California Health and Safety Code Section 11378, in the Superior Court of California, County of Los Angeles, case number YA102323, on or about October 28, 2020.

   g. Felon in Possession of a Firearm, in violation of California Penal Code Section 29800(a)(1), in the Superior Court of California, County of Los Angeles, case number YA100982, on or about October 28, 2020.

**D. Interstate nexus**

33. On August 9, 2021, ATF Firearms and Ammunition Interstate-Nexus Expert Special Agent Ryan Catanzano examined the rifle and 40 rounds of ammunition found in **Flores**'s bedroom.

34. Special Agent Catanzano confirmed that the rifle was manufactured by Molot-Orozhie in Russia, outside of the United States. Because it was found in California, the rifle traveled in and affected foreign commerce before **Flores** possessed the rifle on March 30, 2021.

35. Special Agent Catanzano also confirmed that the 40 rounds of ammunition were manufactured by Poongsan Corporation in either South Korea or Nevada. Because the ammunition was found in California, the ammunition traveled in and affected interstate or foreign commerce before **Flores** possessed the ammunition on March 30, 2021.

**E.     Federal search warrant on Flores's cell phone and iCloud account**

36.    On September 13, 2021, I searched **Flores**'s cell phone pursuant to a federal search warrant issued by U.S. Magistrate Judge Alka Sagar (MJ 21-3806) and discovered on the device a digital photograph of **Flores**, in his bedroom, with what appeared to be the same VEPR-Pioneer rifle that officers recovered on March 30, 2021.  The photograph appeared as follows:



37.    In addition to this photograph, I found numerous other firearm-related photographs and videos on **Flores**'s cell phone, including photographs of **Flores** holding, and video of **Flores** shooting, what appeared to be the same VEPR-Pioneer rifle that officers recovered on March 30, 2021.

38.    I also found evidence on **Flores**'s cell phone of an Apple iCloud account associated with **Flores**'s cell phone.

39.    During the search of **Flores**'s cell phone, I observed that the iCloud account was assigned to **Flores**'s cell phone.  I

went into the iCloud tab located in the settings of **Flores**'s cell phone and observed several items selected to be backed up to the iCloud account, including photographs, emails, contacts, notes, messages, and several other categories of electronic information that were set to be backed up to the iCloud account.

40. On November 16, 2021, an ATF digital forensics examiner downloaded the contents of **Flores**'s iCloud account pursuant to a federal search warrant issued by U.S. Magistrate Judge Paul Abrams (MJ 21-4914). On November 23, 2021, the ATF digital forensics examiner was able to fully decrypt the search warrant data, and on December 7, 2021, I began to review the contents of the data.

41. The photographs and videos on **Flores**'s cell phone did not appear to be fully backed up to **Flores**'s iCloud account. Many of the photographs and videos on **Flores**'s phone, including the one shown above, were not in the iCloud account data.

42. But I did find, in **Flores**'s iCloud account data, numerous photographs and videos of a scantily clad young woman in what appeared to be **Flores**'s bedroom holding and posing with what appeared to be the same VEPR-Pioneer rifle.

43. Additionally, although I did not find any photographs of **Flores** holding the VEPR-Pioneer rifle in **Flores**'s iCloud account data, I did find a photograph of **Flores** holding what appeared to be an AR-15-style rifle. No such rifle was recovered by TPD officers when they searched **Flores**'s bedroom on March 30, 2021.

## CONCLUSION

44. For the reasons described above, there is probable cause to believe that **Christian Roberto Flores** has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 23rd day of February, 2022.

_____
HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE